*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* APPLICATION OF CONSUMERS ENERGY COMPANY TO INCREASE RATES.

---

RESIDENTIAL CUSTOMER GROUP,

      Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION
and ASSOCIATION OF BUSINESSES
ADVOCATING TARIFF EQUITY,

      Appellees,

and

CONSUMERS ENERGY COMPANY,

      Petitioner-Appellee.

FOR PUBLICATION
July 29, 2021
9:10 a.m.

No. 351261
Public Service Commission
LC No. 00-020322

---

Before: FORT HOOD, P.J., and MARKEY and GLEICHER, JJ.

FORT HOOD, P.J.

Appellant Residential Customer Group (RCG) appeals as of right the order of the Michigan Public Service Commission (PSC), which, among other things, granted in part petitioner Consumers Energy Company's (Consumers') request to raise its rates for its natural gas service. *In re Application of Consumers Energy Co*, order of the Public Service Commission, entered September 26, 2019 (Case No. U-20322). RCG asserts that the PSC erred by adopting a projected test period extending more than 12 months after the rate case was filed for estimating Consumers' costs. We affirm.

## II. FACTUAL BACKGROUND

-1-

The PSC's order engendering this appeal includes the following background information:

> On November 30, 2018, Consumers Energy Company (Consumers) filed an application seeking authority to increase its retail rates for the distribution of natural gas by approximately $229 million over the rates approved in the August 28, 2018 order in Case No. U-18424, and for other relief. The request was based on a 12-month projected test year ending September 30, 2020. In response to issues raised by the Commission Staff and intervenors during the course of the proceedings, the company made adjustments and reduced the request to approximately $204 million.
>
> . . . At the prehearing conference, the [administrative law judge (ALJ)] granted petitions for leave to intervene filed by the Association of Businesses Advocating Tariff Equity (ABATE)[ ] . . . , the Residential Customer Group (RCG), and [others]. The Staff also participated in the proceeding.
>
> * * *
>
> . . . Evidentiary hearings were held on May 13-15, 17, and 22, 2019. . . . The ALJ issued a Proposal for Decision (PFD) on August 1, 2019. Exceptions were filed by Consumers, the Staff, . . . ABATE, . . . and RCG on August 16, 2019, and replies to exceptions were filed by Consumers, the Staff, . . . and RCG on August 26, 2019. The record consists of 2,339 pages of transcript and 338 exhibits. [*In re Application of Consumers Energy Co*, order of the Public Service Commission, entered September 26, 2019 (Case No. U-20322), pp 1-3 (footnote and selected parentheticals omitted).]

The PSC ultimately authorized Consumers "to implement rates that increase its annual revenues by $143,531,000 over the rates approved on August 28, 2018, in Case No. U-18424, on an annual basis . . . ." *Id*. at 145.

## II. ANALYSIS

A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *In re Consumers Energy Co*, 279 Mich App 180, 188; 756 NW2d 253 (2008). A party aggrieved by an order of the PSC has the burden of proving by clear and convincing evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a statutory requirement or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). A reviewing court gives due deference to the PSC's administrative expertise, and is not to substitute its judgment for that of the PSC. *Attorney General v Pub Serv Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999).

Issues of statutory interpretation are reviewed de novo. *In re Complaint of Rovas*, 482 Mich 90, 102; 754 NW2d 259 (2008). A reviewing court should give respectful consideration to

an administrative agency's interpretation of statutes it is obliged to execute, but not deference. *Id*. at 108.

Among the several provisions set forth in MCL 460.6a(1) is that "[a] utility may use projected costs and revenues for a future consecutive 12-month period in developing its requested rates and charges." According to Consumers, "[a] test year is a device employed to determine representative levels of revenues, expenses, rate base, and capital structure for use in the rate-setting formula, which, conceptually, can be historical, projected, or some combination of historical and projected."

In this case, as the PSC noted, "Consumers used actual financial results from the historical test year ended December 31, 2017, normalized and adjusted for inflation and other projected changes, to arrive at a fully projected test year of October 1, 2019, through September 30, 2020." *In re Application of Consumers Energy Co*, order of the Public Service Commission, entered September 26, 2019 (Case No. U-20322), p 7. RCG urged rejection of Consumers' projected test year in favor of exclusive reliance on its historical year, on the ground that MCL 460.6a(1) envisions projected years beginning no later than the date that the rate case is filed, i.e., in this case, November 30, 2018. RCG protests that Consumers' "self-selected projected test year extending 33 months after the historical test year, or 22 months after [the] November 30, 2018 rate case filing . . . included a vast amount of speculative forecasts . . . of future investment and costs."

The PSC rejected RCG's arguments, explaining as follows:

> RCG . . . proposed using an historical test year, adjusted for known changes, to determine Consumers' future costs and revenues. According to RCG, the company's use of a projected test year "rests upon a tortured interpretation of the statutory language of Section 6a(1), MCL 460.6a(1), that essentially the inclusion of 'a' in the statutory phrase 'for a future consecutive 12-month period' means that the utility can project any future 12-month period, disconnected from either a historical year, or the date of the rate case filing, or anything else." RCG argued that the use of an historical test year to project income and expenses results in more reasonable and just rates.

> * * *

> Consumers disputes RCG's claim that the company's projected test year costs are exaggerated and speculative. Consumers states that the enactment of 2008 PA 286 "provided a shift in the regulatory ratemaking paradigm—changing from the use of historical, known, and measurable costs, with known and measurable adjustments, to forward-looking, projected costs." As a result, Consumers asserts, the Commission indicated in subsequent orders that, rather than relying on historical data, it would consider sufficiently supported test year projections. In addition, the company argues that RCG failed to demonstrate how 2017 historical information could be used to establish rates, and did not provide a calculation of known changes . . . .

The Commission . . . adopts Consumers' projected test year ending September 30, 2020. As noted by the company, MCL 460.6a(1) permits utilities to use "projected costs and revenues for a future consecutive 12-month period in developing its requested rates and charges." Although a utility may use a projected test year to develop its requested rates and charges, it bears the burden to substantiate its projections. If the utility cannot or chooses not to provide sufficient support for a revenue or expense item, the Staff, intervenors, or the Commission may choose an alternative method for determining the projection. . . . RCG's arguments do not support the Commission rejecting Consumers' projected test year. [*In re Application of Consumers Energy Co,* order of the Public Service Commission, entered September 26, 2019 (Case No. U-20322), pp 8-10 (citations omitted).]

On appeal, RCG challenges the test year at issue primarily on the basis of its interpretation of MCL 460.6a(1). RCG also offers policy arguments against reliance on projections extending more than a year beyond the initiation of the rate case, and in doing so largely adopts or repeats the advocacy below of ABATE, the Attorney General, and the PSC's staff. However, RCG challenges the evidentiary basis for the chosen test year only by complaining generally that, because it extends 22 months beyond the date on which the rate case was filed, it has resulted in speculative and exaggerated forecasts concerning Consumers' future costs and investments. RCG does not specifically identify or explain what estimates are flawed, nor does it offer any alternative calculations.

RCG insists that the one-sentence statutory provision at issue, that "[a] utility may use projected costs and revenues for a future consecutive 12-month period in developing its requested rates and charges," MCL 460.6a(1), should not be understood as allowing a utility to choose some arbitrarily distant 12-month period for this purpose, but should instead be understood to envision a future period beginning no later than when the utility initially files its rate case. We are more inclined to agree with the PSC, Consumers, and also the panel of this Court who issued the unpublished decision in *In re Application of DTE Electric Co to Increase Rates*, unpublished per curiam opinion of the Michigan Court of Appeals, entered February 25, 2021 (Docket Nos. 349924 and 350008), p 11, that the statute's authorization of the use of "a future consecutive 12-month period" limits the future period only in that it must consist of 12 consecutive, or contiguous, months, and thus does not imply that it must begin no later than the filing date of the attendant rate case.

RCG argues that its reading of MCL 460.6a(1) is properly informed by related statutory provisions. See *Jennings v Southwood*, 446 Mich 125, 136-137; 521 NW2d 230 (1994) (statutes that have a common purpose should be read to harmonize with each other in furtherance of that purpose). RCG points out that MCL 460.6a(5) sets forth a rule by which rate requests are approved by default where the PSC fails to issue a final order within 10 months after the utility's rate filing. Likewise, MCL 460.6a(6) prohibits the filing of a new rate case "earlier than 12 months after the date of the filing of a complete prior general rate case application." RCG argues that the running of these provisions' timing specifications from the filing date should also apply to MCL 460.6a(1), and further points out that such operation would align the prospective test year of Subsection (1) with the 12-month cycle envisioned by Subsection (6). We are of the opinion that, although such

alignment might have empirical appeal, had the Legislature desired that outcome it would have clearly called for it.

Moreover, Subsection (5) also starts the 10-month decision period anew in the event that the utility either significantly amends its filing, or requests its own timing extension, and Subsection (6) alternatively states that "[a] utility may not file a new general rate case application until the commission has issued a final order on a prior general rate case or until the rates are approved under subsection (5)." These provisions permit continuing the proceedings beyond the 12 months commencing with the filing date, and indicate that the running of timing limitations from the filing date is not so seriously ensconced as to militate in favor of projecting such a specification into Subsection (1). This is particularly true in light of the lack of any expressed limitations in MCL 460.6a(1) on how far in the future a projected test year may run. The Legislature's decision not to speak on the issue reflects its understanding that the PSC would reject a test year set so far removed from circumstances actually in view as to render it less than workable, or that, should the PSC adopt such a flawed test year, it would be subject to appellate challenges for unreasonableness. See MCL 462.26(8); *In re MCI Telecom Complaint*, 460 Mich at 427.

With all of the above in mind, we reject RCG's challenge to the prospective test year adopted in this case.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher